OPINION
{¶ 1} Appellants Mae and Lonnie Fulp and Appellant Ella Fulp appeal the decision of the Tuscarawas County Court of Common Pleas, Juvenile Division. The parties raise various issues for our consideration. The following facts give rise to this appeal.
 {¶ 2} This matter commenced on January 9, 2003, when the trial court conducted a shelter care hearing concerning Appellant Ella Fulp's three minor children. As a result of this hearing, the trial court placed Reyna and Connel Perez, in the temporary custody of their father, Appellee Gregoria Perez. The trial court placed Amina George, in the temporary custody of her maternal grandmother, Appellant Mae Fulp. Since the shelter care hearing, Appellee Gregorio Perez began living with Appellants Mae and Lonnie Fulp. As a result of this living arrangement, the three children have not been separated.
 {¶ 3} On January 10, 2003, Appellee Tuscarawas County Department of Job and Family Services ("agency") filed a complaint. In its complaint, the agency alleged Reyna, Connel and Amina were neglected and dependent children. On January 17, 2003, Amina's father, Laverne George, filed a motion for temporary custody of Amina. Appellee George also filed a UCCJA affidavit. On February 19, 2003, Appellants Mae and Lonnie Fulp served their motion for custody of Amina and a discovery request pursuant to Juv.R. 24. On February 26, 2003, Appellants Mae and Lonnie Fulp filed a motion to be joined as parties.
 {¶ 4} The magistrate conducted an adjudicatory hearing, on February 26, 2003 and March 5, 2003. At the hearing on February 26, 2003, the magistrate expelled Appellant Mae Fulp, from the proceedings, because her motion to be joined as a party had not yet been granted. On March 12, 2003, the magistrate issued his decision finding that all three children were dependent and neglected. The magistrate recommended that the shelter care placements continue.
 {¶ 5} On March 19, 2003 and April 10, 2003, the magistrate conducted the dispositional hearing. The magistrate terminated the dispositional hearing, in the middle of the cross-examination of Appellee Laverne George, due to time constraints. On April 14, 2003, the magistrate issued his decision denying Appellants Mae and Lonnie Fulp's motion to be granted party status. The magistrate's decision adopted the case plan and ordered Amina moved to the temporary custody of Appellee Laverne George.
 {¶ 6} The magistrate scheduled a hearing, on May 20, 2003, for ancillary custodial motions. On April 22, 2003 and April 28, 2003, Appellants Mae and Lonnie Fulp filed objections to the magistrate's decision of April 14, 2003. On May 16, 2003, Appellants Mae and Lonnie Fulp filed a motion for health and educational services for Amina. On May 19, 2003, the agency filed a motion to strike all motions filed by Appellants Mae and Lonnie Fulp due to their non-party status. The magistrate issued a decision, on June 20, 2003, again denying Appellants Mae and Lonnie Fulp party status. The magistrate also reduced Appellants Mae and Lonnie Fulp's visitation time with Amina. Appellant Ella Fulp filed objections to the magistrate's decision and Appellants Mae and Lonnie Fulp filed cross-objections.
 {¶ 7} On November 14, 2003, the trial court issued a judgment entry overruling the objections filed by Appellant Ella Fulp and Appellants Mae and Lonnie Fulp. Appellant Ella Fulp and Appellants Mae and Lonnie Fulp timely filed notices of appeal and set forth the following assignments of error for our consideration:
 Mae and Lonnie Fulp's Assignments of Error {¶ 8} "I. The trial court erred and abused its discretion in denying mae and lornis fulp's motion to be joined as parties pursuant to R.C. 3109.28, Juv.R. 2(Z) and in re: Hoffman (ct. App. Stark, 3-3-2003), unreported Nos. 2002CA0419 and 2002CA0422, attached.
 {¶ 9} "II. The Trial Court lacked subject matter jurisdiction over the motion for legal custody filed by amina's father, laverne george, as his uccja affidavit is incomplete and does not contain a Certificate of Service. Reference R.C. 3109.27 and Juv.R. 20(C).
 {¶ 10} "III. Mae and Lonnie fulp were denied due process of law under Article I, Section 16, Ohio Constitution and theFourteenth Amendment to the United States Constitution when the magistrate terminated the dispositional hearing and issued a dispositional order before hearing all the witnesses, and before allowing the fulps any opportunity to call their own witnesses.
 {¶ 11} "IV. The trial court erred and abused its discretion in separating amina george from her siblings and her primary caregivers, and placing her with her father.
 {¶ 12} "V. The trial court erred and abused its discretion in failing to grant mae and lornis fulp's motion for health and Educational Services to amina."
 Ella Fulp's Assignments of Error {¶ 13} "I. The Juvenile Court committed reversible error when it conducted the April 14, 2003 dispositional hearing without having First Journalized a judgment entry which adopted the Magistrate's Decision for the March 12, 2003 adjudicatory hearing.
 {¶ 14} "II. The Juvenile Court Committed reversible error when it did not dismiss the complaint when the dispositional hearing was conducted more than 30 days after the adjudicatory hearing.
 {¶ 15} "III. The Juvenile Court Committed reversible error by failing to afford a complete dispositional hearing when it concluded the same without the completion of all testimony and evidence taking due to `time constraints' and entering a disposition and adopting the case plan without a full hearing.
 {¶ 16} "IV. The Juvenile Court Committed Reversible error when it awarded temporary custody to the father as the same was not in the best interest of all three of the children nor in the best interest of the child, amina george; and, it committed this reversible error when it made such an award absent full and complete evidence and testimony being provided the court at the dispositional hearing.
 {¶ 17} "V. The Juvenile Court committed reversible error when it failed to enter interim orders pending hearing On the timely filed objections or, in the absence of the same, To dismiss the complaint.
 {¶ 18} "VI. The Juvenile Court committed reversible error when it unilaterally declared appellant ella fulp's objectios were without merit and overruled the same without discussion or comment.
 {¶ 19} "VII. The Juvenile Court committed reversible error when it did not grant party status to mae and lonnie fulp, the prior legal custodians of the minor children."
 Appellants Mae and Lonnie Fulp I {¶ 20} Appellants Mae and Lonnie Fulp maintain, in their First Assignment of Error, the trial court abused its discretion when it denied their motion to be joined as parties pursuant to R.C. 3109.28, Juv.R. 2(Z) and the case of In re Hoffman, Stark App. Nos. 2002CA0419 and 2002CA0422, 2003-Ohio-1241. We agree.
 {¶ 21} Appellants sought to intervene, in this matter, by filing a motion for custody of Amina George and motion to be joined as parties. "When reviewing an order which denied a motion to intervene, the issue is whether the trial court abused its discretion." In re Hoffman at 5, citing Peterman v. Village ofPataskala (1997), 122 Ohio App.3d 758. In order to find an abuse of discretion, we must conclude the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. It is based upon this standard that we review Appellants Fulp's First Assignment of Error.
 {¶ 22} Appellants set forth five arguments in support of their claim that they were entitled to intervene in this matter. First, appellants refer to R.C. 3109.28. This statute addresses joinder of a party having physical custody or claiming parental interest and provides, in pertinent part, as follows:
 {¶ 23} "If the court learns from information furnished by the parties pursuant to section 3109.27 of the Revised Code or from other sources that a person not a party to the parenting proceeding has physical custody of the child, claims to be a parent of the child who has parental rights and responsibilities for the care of the child and who has been designated the residential parent and legal custodian of the child, claims to be any other person with custody of the child, or claims to haveparenting time rights or visitation rights with respect to thechild, it shall order that person to be joined as a party and to be duly notified of the pendency of the proceeding and of the person's joinder as a party. * * *" (Emphasis added.)
 {¶ 24} Under the above statute, appellants maintain they should have been joined as a party because they had physical custody of Amina as a result of the trial court's shelter care order granting Appellant Mae Fulp temporary custody. Further, the trial court's dispositional order granted them the right to visit Amina. Thus, appellants conclude that under R.C. 3109.28, they are entitled to party status.
 {¶ 25} Second, appellants cite this court's decision in Inre Sebastian, Tuscarawas App. Nos. 2001AP080075, 2001AP080074, 2002-Ohio-782. In Sebastian, we concluded the maternal grandparents should have been notified of a motion and hearing on change of circumstances because they were a "party" as defined in Juv.R. 2(Z)[1] since they had legal custody of their grandchildren. Id. at 3. Appellants conclude that because they had temporary custody, like the grandparents in Sebastian, they had the right to party status.
 {¶ 26} Third, appellants rely upon the Ohio Supreme Court's decision in In re Schmidt (1986), 25 Ohio St.3d 331. InSchmidt, the Ohio Supreme Court concluded the paternal grandparents were not entitled to intervene in permanent custody proceedings because they never sought temporary or permanent custody of their grandson and their visitation occurred with the consent of the welfare department. Id. at 336. Thus, the Court concluded that:
 {¶ 27} "The record does not indicate that the Smiths [grandparents] ever stood in loco parentis to Robert, Jr. [grandson] or that they ever exercised significant parental control over, or assumed any parental duties for the benefit of, their grandson." Id. at 337.
 {¶ 28} In the case sub judice, appellants maintain they meet the requirements of the Schmidt decision because Appellant Mae Fulp had temporary custody of Amina. Further, following the dispositional order, appellant had legal visitation rights with Amina. Therefore, under the Schmidt decision, appellants contend they are entitled to be joined as a party in this matter.
 {¶ 29} Fourth, appellants refer to this court's decision inIn re Hoffman, supra. In the Hoffman decision, we cited the Ohio Supreme Court's decision, in Schmidt, and stated:
 {¶ 30} "Intervention by grandparents in a permanent custody proceeding is appropriate where the grandparents have a legal right to or a legally protectable interest in custody or visitation with their grandchild, where the grandparents have stood in loco parentis to their grandchild, or where the grandparents have exercised significant parental control over, or assumed parental duties for the benefit of, their grandchild. Where any of these circumstances are present, it is my view that a denial of the grandparents' motion to intervene would constitute an abuse of the juvenile court's discretion." Id. at ¶ 21.
 {¶ 31} Finally, appellants contend they should have been made a party to these proceedings because it is in the best interest of Amina. Appellants argue they would be able, through discovery, to provide an accurate history of what has occurred in this matter.
 {¶ 32} The Agency and Appellee George respond by citing Juv.R. 2(Y), which defines the term "party." This rule provides:
 {¶ 33} "* * * [A] child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or parents, or if the parent of a child is a child, the parent of that parent, in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and any other person specifically designated by the court."
 {¶ 34} The Agency and Appellee George contend appellants do not qualify as a "party" under Juv.R. 2(Y) because they cannot satisfy the definition of "custodian," as defined in Juv.R. 2(H) or "guardian," as defined in Juv.R. 2(N). The Agency further maintains our decisions in Sebastian and Hoffman are not applicable. The Agency distinguishes the Sebastian decision on the basis that appellants only had temporary custody and the grandparents, in Sebastian, had legal custody. The Agency also finds the Hoffman decision distinguishable because appellants only exercised parental control over Amina for a limited period of time under a temporary custody order and therefore, did not satisfy the factors set forth by this court in Hoffman.
 {¶ 35} In his brief, Appellee George also argues the trial court properly denied appellants party status because of the distinction between "legal" custody and "temporary" custody. Appellee George maintains the right to party status that occurs when one has "legal" custody does not exist for an individual having "temporary" custody. In support of this argument, Appellee George cites the case of In re Massengill (1991),76 Ohio App.3d 220. In Massengill, the Sixth District Court of Appeals determined the grandparents lacked a sufficient right to make joinder mandatory where the Lucas County Children Services Board had temporary custody of the children and the grandparents merely had physical custody. Id. at 225.
 {¶ 36} Upon review of the case law cited by the parties, we conclude the trial court abused its discretion when it denied appellants' request to intervene in this matter. The trial court denied appellants' request on the basis that the right to party status that occurs to one given legal custody does not exist for an individual having temporary custody. Judgment Entry, Nov. 14, 2003, at 4. The trial court made this distinction based upon the definitions provided in Juv.R. 2.
 {¶ 37} However, we conclude these definitions support the conclusion that appellants are entitled to party status. Juv.R. 2(V) defines "legal custody" as "* * * a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities. * * *" The case law clearly supports the conclusion that a person with legal custody has a right to party status.
 {¶ 38} Further, Juv.R. 2(OO) specifically provides that "* * * temporary custody means legal custody of a child who is removed from the child's home, which custody may be terminated at any time at the discretion of the court or, if the legal custody is granted in an agreement for temporary custody, by the person or persons who executed the agreement." Because "temporary custody" means "legal custody," under Juv.R. 2, we conclude appellants are entitled to party status. The fact that temporary custody may be terminated, at any time, does not change the fact that temporary custody, like legal custody, vests in the custodian a legal right which entitles the custodian to party status. Thus, under theSchmidt, Sebastian and Hoffman decisions, we conclude appellants are entitled to party status.
 {¶ 39} Appellants' First Assignment of Error is sustained. We will not address the merits of appellants' Second, Third, Fourth or Fifth Assignments of Error as they are moot based upon our disposition of appellants' First Assignment of Error.
 Appellant Ella Fulp {¶ 40} Appellant Ella Fulp sets forth seven assignments of error for our consideration. These assignments of error are moot based upon our disposition of Appellants Mae and Lonnie Fulp's First Assignment of Error.
 {¶ 41} The judgment of the Court of Common Pleas, Juvenile Division, Tuscarawas County, Ohio, is hereby reversed and remanded for further proceedings consistent with this opinion.
Wise, J., Hoffman, P.J., and Farmer, J., concur.
[1] Under the current version of the Rules of Juvenile Procedure, the term "party" is defined in Juv.R. 2(Y).